## John King Jr. v. Geo. H. Potter.

*Ejectment: Tax Title: Improvements: Description.* Under the statute—*2 Comp. L. f. 4603*—permitting the defendant in ejectment, or others through whom he claims, claiming title to lands by a deed of the Auditor General, &c. to recover compensation for improvements made therein, &c.

*Held,* That this statute applies only to the lands described in the plaintiffs declaration, and, in the deeds, or other instruments through which defendant claims.

The identity of the lands claimed by the defendant, with those claimed by the plaintiff in his declaration, must be established by the rules of law and evidence applicable to the instruments under which plaintiff and defendant respectively claim, and which they produce in support of their respective titles.

*Held further,* That the plaintiff in this case, having no privity or connection with the defendant or those through whom he claims, and being in no way responsible, either for the description in these tax deeds or the attempt to take possession under them, there is no just principle upon which he can be made to suffer for the mistakes of others through such deeds.

A party purchasing at a tax sale, as between himself and the owner of other lands, is bound at his peril, to take notice of the description in his own deed: and if he or his grantees make a mistake and go on the lands of others, they must bear the consequences.

*Heard April 9th.   Decided April 13th.*

Error to St. Clair Circuit.

This was an action to recover possession of certain lands in St. Clair County.

The defendant below claimed title to the land described in the plaintiff's declaration, by virtue of several tax deeds and a sheriff's deed.   He also claimed compensation for buildings and improvements made by him, having been in possession of the premises for six years and more, prior to the commencement of this suit.

The plaintiff proved his title to the premises by a patent from the United States to himself.

The tax deeds and the sheriff's deed contained descriptions different from those in the declaration, and not in accordance with those of the United States surveys, or by metes and bounds.

The defendant, nevertheless, claimed that if he went into possession under the tax deeds in good faith, and re-

mained there six years and made improvements he was entitled to compensation under the statute.—*2 Comp. L.* § *4,603.*

The jury found that the plaintiff was the owner of the land described in the declaration; that the defendant unlawfully held them — estimated the increased value of the premises by reason of the improvements, at several hundred dollars, and assessed plaintiff's damages at six cents.

*Mitchell & Farrand,* for plaintiff in error.

1. The Circuit Court erred in allowing any questions to be asked or testimony given tending to show that the land could be found in any other than a government description.

The object of this testimony was to show that the land might have been somewhere else than in "lot one," had the government made such other description.

The north-west quarter of section nine had never been surveyed or laid out, and any testimony tending to show that the lot could be found in such a quarter, if surveyed, was improper, and irrelevant to the issue. The government survey and division was the only matter that should govern.

"If the tract be a subdivision of a section authorized by the United States for the sale of the public lands, it shall be described by a designation of such subdivision, with the number of the section, township and range."— *Comp. Laws,* § *804, Sub. 2.*

We submit that parol proof cannot be admitted to change or vary the location, or to fix assessed land in any place other than the legal subdivision designated.

2. The deed from the state to Davenport, and subsequent deeds transferring that title, were clearly inadmissible.

There was no such legal subdivision of the section.

The plaintiff bought lot one. The sale of N. E. ¼ of N. W. ¼ could not affect his title, as he was not bound to look for such a description. The owner had no reason,

and was not bound to look for such a description, in the payment of his taxes; and title under a different description must be void for all purposes. If the true description is not necessary, the result would be to deprive a man of his property, without any knowledge by him of any proceeding against it.—*Thames Manufacturing Co. v. Lother, 7 Conn. 550; Hubbell v. Weldon, Hill & Denio, 139.*

This kind of description defeats the owner from an opportunity of paying taxes, and the deed is void.—*Tallman v. White, 2 Comst. 67; Blackwell on Tax-titles, 123.*

3. All the other tax deeds were irrelevant on the same ground.

4. The question whether the court erred in admitting proofs of increased value, by reason of improvements, is determined by the decision of the preceding and following propositions.

5. By the proofs it is clear that the northeast quarter of the northwest quarter was not a proper government description. The plaintiff paid all the taxes he could find assessed or returned against his lands. No taxes were assessed against this or any other land in 1843, on which the taxes were not paid. The northeast quarter of the northwest quarter was not assessed at all, and even if it could be said to cover the land in controversy, the Auditor General's deed was not founded upon any tax. The re-assessment in 1843, for taxes in 1841, will not sustain the deed, especially where it appears that there was no tax for the year 1841. There was no delinquent tax as the foundation of a deed. The defendant cannot claim under Section 4,603, of Compiled Laws, that he, or those under whom he holds, entered into and was in actual possession, claiming title by virtue of a sale made by the Auditor General, for non-payment of taxes. To make such a claim valid there must have been some tax, regular or irregular, as a basis of the deed. There was none here. A contrary doctrine would lead to gross injustice.

6. The court erred in charging the jury that the defendant, and those under whom he claims, having been in possession more than six years, claiming title under a tax deed, when there was in fact a sale made and deed given, he was entitled to compensation; and in refusing to charge the jury, that no taxes having been assessed on the land, and the land not returned as delinquent, &c., the subsequent sale and deed did not make such a title as would entitle the claimant to compensation, &c.

The question of possession, under a tax title, should have been left to the jury. We reiterate our previous claim, that there must have been some sort of tax assessed and levied.

"The right to sell is founded upon the fact of non-payment."

Where there is no tax due, the deed is void, and confers no title.—*Jackson v. Clark, 18 Johns. 441; Jackson v. Esty, 7 Wend. 148; 4 Wheat. 79.*

*Conger & Harris,* and *C. I. Walker,* for defendants in error.

1. If one goes into possession of real estate under a claim of title from two sources, viz., one a title from the Auditor General, and the other from another source, and continues in possession thereof six successive years, and makes improvements, if both of the titles fail, is he entitled to compensation for his improvements under *2 Comp. L. § 4603?*

The statute under consideration is founded in the strongest equity and the clearest justice, and should be most liberally construed to carry out its equitable purpose. —*Longworth v. Wolfinger, 6 Ohio, 1; Davis v. Powell, 31 Id. 320; Whitney v. Richardson, 31 Vermont, 305.*

It in substance provides that if one shall be in the actual possession of land for six successive years, claiming title thereto under a deed from the Auditor General, or

certain other officers, he shall be entitled to compensation for the improvements made thereon.—*2 Comp. L.* § *4603.*

This does but justice to the claimant in good faith, while it does no injustice to the owner of the legal title; for he only pays the actual value of the improvements made.

If one is in the possession of land, claiming title thereto by virtue of several deeds from different sources, he claims under each of those deeds.

2. If one goes into possession of lands under an Auditor General's deed, in good faith claiming title thereto, but the description in said deed is so imperfect or uncertain that no title can pass thereby, and he continue in possession thereof making improvements, can he recover for the value of such improvements under said section 4603 ?

The descriptions in the deeds from the Auditor General were not in accordance with those of the United States survey, or by metes and bounds, and, for the purpose of this argument, it may be admitted that the land could not be precisely located thereunder. — *Amberg v. Rogers,* 9 *Mich. 332.*

But we insist that if defendant in good faith claimed title by virtue of the deeds, it is sufficient, whether the deeds described the land he occupied, or other land, or, with certainty, no land at all. — *Wendell v. Moulton, 6 Fost. 41. 46, 68; Waldron v. Woodcock, 15 Ohio, 13; Shrol v. Blinker, Id. 152; Beardsley v. Chapman, 1 Id. 118.*

3. If land be sold for taxes, and an Auditor General's deed be given, is the purchaser, under such sale and deed, entitled to the benefits of section 4603, where the land thus sold and deeded was assessed and returned by a very different description from that by which it purports to have been sold as delinquent for the non-payment thereof?

There can be no doubt but that one who is in possession of land by virtue of a deed from the Auditor

General, is within the very letter as well as the spirit of the statute, and it is immaterial whether the tax for which it was sold was merely invalid, or whether it was sold by mistake without any tax whatever, or whether it was sold by a different description from that by which it was assessed.

The statute was intended to meet every case where possession is held by virtue of an Auditor General's deed.

CHRISTIANCY J.

By section 4603 Compiled Laws, (being sec. 50 of Ch. 134) it is provided that "when the defendant in ejectment, or any person through whom he claims title, shall have been in actual possession of the premises for six successive years, or more, after this chapter shall take effect as a law, and before the commencement of the action and claiming title either by virtue of, or in opposition to a sale made by any executor, administrator or guardian, or the Auditor General, or any county treasurer, or other person or body corporate authorized by any statute to make sale of land for non-payment of taxes, such defendant shall be allowed a compensation for the value of any buildings and improve- ments on the premises made by him; or any person through whom he claims title."

The first question presented by this case is, whether this statute extends to any other lands than those described in the plaintiff's declaration and in the deeds or other in- struments through which the defendant claims title.

It is too obvious to require or admit of argument that the lands "claimed" by the defendant and of which he has been "in possession," must be the same or some of the same described in and claimed by the declaration. The statute clearly contemplates their identity, and it cannot possibly be made to apply to any other.

The defendant here undertakes to "claim title." under a tax "sale" and deed by the Auditor General.    And when-

ever the defendant "claims title" "by virtue of a sale made
by any executor, administrator, guardian, Auditor General,"
&c., as such title can only be by deed, we think it
clear that, in order to bring a defendant within the fair
intent of this statute, the premises to which he thus claims
title must be such only as are described in the deed or
deeds through which he "claims title," and that this de-
scription must be such as, under the rule of law applicable
to the deed under which he claims, are sufficient for the
purpose of identifying the land.  In other words, this ques-
tion being one of identity of the premises claimed by the
defendant with those claimed in the plaintiff's declaration,
must be decided by the rules of law and evidence applicable
to the instruments under which the plaintiff and the de-
fendant respectively claim, and which each produces in support
of his respective title or claim.  The statute, we think, was
never intended to apply to a case where the identity was
not thus established.

By reference to the plat, showing the government sub-
divisions of this fractional section, the correctness of which
is not disputed, it will be seen that the section was ren-
dered fractional by the line of the Chippeway Reservation
( of which this fractional section is a part ) cutting off
nearly all of what, had the section been entire, would
have constituted the southwest quarter, and a large por-
tion of what would have been the southeast quarter and the
northwest quarter, but leaving the northeast quarter un-
touched.

By reference to the field notes also which were in
evidence, it will be seen that the government surveyor, in
surveying and subdividing this fractional section, established
a quarter post on the north line at the usual distance of
forty chains west of the northeast corner, and that this
was $27\frac{56}{100}$ chains from the point where the section line
extended westward, struck the west line of the reservation;
and that this reservation line ran in nearly a southeast-

wardly direction striking the south line of the section only $20\frac{50}{100}$ chains west of the southeast corner.

It will also be seen, that what lay west of the quarter section line, and north of the center line of the section (which, if not otherwise subdivided, would have constituted the northwest fractional quarter) was by the government subdivided, so as to make a lot of twenty chains in width (from north to south) and $27\frac{50}{100}$ chains along the north section line, and of less length on the south. This lot was marked and numbered on the plat as lot number 1 (one). The balance of what might have been called the northwest fractional quarter, was included in a lot containing $59\frac{50}{100}$ acres, composed in part of forty acres, which, had it not been thus included, would have constituted, and might have been described as the southwest quarter of the northeast quarter. This lot of $59\frac{50}{100}$ acres, was marked as lot number two, of the fractional section.

Properly speaking, therefore, there was no such government subdivision as the northwest fractional quarter; and in no possible sense was there any such government subdivision as the east or west half or part, or the northeast, or southwest, or northwest half or part of the northwest fractional quarter; nor would any land with sufficient certainty be designated by such description. The premises described in the plaintiff's declaration, it is admitted, were a part of lot number one, above described.

By the statute (*Comp. Laws,* § *804, Sub. 2*) — and a similar provision was contained in the previous laws — this land should have been described, in assessing it, and consequently in a deed on tax sale, by the designation of its subdivision according to the public surveys of the United States.

There is no pretence that any of these tax deeds under which the defendant undertook to claim, complied with

this provision—most (if not all, but one of them) expressly described the land as situate on the northeast quarter or northeast fractional quarter, which, by no physical possibility, could be made to include any part of lot "one," which was wholly west of that quarter. And no oral evidence was admissible to establish so manifest an absurdity—no evidence being offered to impeach the correctness of the plat.

One of the deeds, however, (that to Ira Davenport) described the land as the "northeast fractional quarter of the northwest quarter of section nine," &c. Now it is not only clear that there was no such legal subdivision, but that applying this description to the land without reference to its legal subdivisions, the land intended must be wholly uncertain.

But we need not enquire whether this description would be or could be made sufficient, as between an individual grantor and grantee. The legislature have not left us at liberty to adopt any such principle. They have seen fit, in their wisdom, to fix certain rules touching the sufficiency of descriptions for purposes of taxation and deeds on tax sales. And we could not hold that sufficient which they have deemed insufficient.

We have failed to see the force of the argument so ably and earnestly pressed upon us by the counsel for defendant in error; that, though the description does not comply with the statute and is insufficient to pass the title under the tax deed, and though the tax deed described other or different land than those in suit, or, with certainty, no land at all; yet if this defendant claimed the lands in suit in good faith by virtue of the deeds, this is sufficient to give him the benefit of the statute in reference to improvements.

The case of *Wendell v. Moulton, 6 Fost.* ( *N. H.* ) *41*, which he cites, has, we think, no bearing upon a case like the present. The plaintiff had given to the defendant

or the person under whom he claimed, a bond for a deed, and afterwards a deed of a portion of a larger tract owned by the plaintiffs. The purchaser had, with full knowledge of the plaintiffs, taken possession of a portion which, on survey many years after, was found not to be within the description given in the instrument. Extensive improvements had been made in good faith by the grantee. The possession was open and visible, and well known to the plaintiffs. The improvements were made with his full knowledge and without objection. He, as well as the defendant and those under whom he claimed, was either ignorant of the mistake, or he knew the mistake of his grantee and purposely led him into the error and the making of the improvements. There was very strong evidence of this fraud. The case was such, that in a court of equity, the defendant would hardly have needed the aid of a statute to secure him the benefit of his improvements. Their statute was much more general than ours. It applied to all defendants in real actions, who had been in actual and peaceable possession for six years "under a supposed legal title." If the plaintiff in that case was mistaken, he seems to have been as much responsible for the mistake as the grantee, and if he acted fraudulently, the whole responsibility was his.

But in the case before us, the plaintiff has no privity or connection with, but is an entire stranger in law to the grantor and the grantee, and in no way responsible either for the description in these tax deeds or the attempt to take possession under them; and there is no just principle upon which he can be made to suffer, or be accountable, for a mistake of the parties claiming under the deed, in taking possession of the plaintiff's land, or for improvements made against his will, and which, by reason of the situation of other land of his, may, for aught we know, be an injury to him, though, when considered only with reference to the particular land improved, the value of that particular portion might be increased.

On the other hand, as respects the question of the good faith of the defendant or those under whom he claims, we think the party purchasing under a tax sale must, as between him and the owner of other lands, be bound at his peril to take notice of the description in his own deed, and to know what land, if any, it describes, and whether it sufficiently describes any. And if the defendants or those under whom they claim by tax deeds, have made a mistake and gone on to the land of the plaintiff, instead of that described in their deeds, it is certainly more equitable that the defendant who has, or claims under, the deed, and acts under it, should bear the consequences or burden of the mistake, than the plaintiff, who is a stranger to it, who has no occasion to know of its existence, and who, if he saw it, would, at the same time, see that it did not affect his land.

As to the argument, that it is just and equitable, as a general rule, to allow the defendant in ejectment, for improvements made by him, it is sufficient to say, the legislature have thought otherwise.

This disposes of the present case, and renders it unnecessary to notice the point raised by the plaintiff in error, that the defendant in this case claimed title under an execution sale as well as the tax sales. The effect of such a double claim, as it may bear upon the question of improvements, will be decided in the case of *King v. Harrington*, argued at the present term, and not yet disposed of.

The judgment of the Circuit Court, so far as it relates to the improvements, in favor of defendants, must be reversed, with costs; and the judgment, so far as it is in favor of the plaintiff below for the recovery of the land, must be affirmed.

The other Justices concurred.